# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 09-694V
Filed: August 29, 2017
Not for Publication

```
*************************************
TAMI L. BALDWIN, as Guardian          *
Ad Litem for Her Minor Daughter, L.A.B., *
                                      *        Attorneys' fees and costs decision;
              Petitioner,             *        reasonable attorneys' fees and costs
  v.                                  *
                                      *
SECRETARY OF HEALTH                   *
AND HUMAN SERVICES,                   *
                                      *
              Respondent.             *
                                      *
*************************************
```

Neal J. Fialkow, Pasadena, CA, for petitioner.
Lisa A. Watts, Washington, DC, for respondent.


**MILLMAN, Special Master**


### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On October 14, 2009, petitioner filed a petition for compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012). Petitioner alleged that her daughter, L.A.B., suffered seizures and developmental delays that were caused or significantly aggravated by L.A.B.'s receipt of several different vaccines on October 25, 2006 and January 2, 2007. On October 20, 2016, the undersigned issued a decision awarding damages pursuant to the parties' stipulation. Petitioner filed a motion for attorneys' fees and costs on April 6, 2017,

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

and a supplemental motion for attorneys' fees and costs on August 8, 2017.   For the reasons set forth below, the undersigned **GRANTS** petitioner's motion for attorneys' fees and costs.

## PROCEDURAL HISTORY

Petitioner filed her petition on October 14, 2009.

From the time the petition was filed until June 30, 2010, petitioner worked on filing complete medical records.   On August 30, 2010, the undersigned ordered petitioner to file an expert report.   Petitioner filed an expert report from Dr. Robert Podosin on March 21, 2011.   On June 13, 2011, respondent filed an expert report from Dr. Peter Bingham.   After a status conference held on June 28, 2011, the undersigned ordered petitioner to file a supplemental expert report from Dr. Robert Podosin by July 18, 2011.   After requesting and receiving an extension of time, petitioner filed Dr. Podosin's supplemental expert report on August 1, 2011.

During a status conference on September 12, 2011, petitioner said she was beginning to draft a demand.   The undersigned ordered petitioner to make a demand on respondent by October 14, 2011.   On October 31, 2011, petitioner filed a status report saying she was uncomfortable making a demand until she understood L.A.B.'s future treatment needs.

After the next status conference on November 8, 2011, the undersigned ordered petitioner to collect and file additional medical records and L.A.B.'s individualized education plan ("IEP"). The undersigned also ordered petitioner to contact L.A.B.'s pediatric neurologist to determine L.A.B.'s future treatment needs.   During a status conference on January 10, 2012, the undersigned ordered petitioner to pursue genetic testing of L.A.B. to rule out genetic mutation as a cause of her seizure disorder.

Another status conference was held on March 1, 2012, during which petitioner said she was working on developing a demand.   In the next status conference on May 15, 2012, the undersigned ordered respondent to file a supplemental expert report from Dr. Bingham commenting on L.A.B.'s medical records from Children's Hospital in Denver, which petitioner had recently filed.   The undersigned also ordered petitioner to file L.A.B.'s latest IEPs.

During the next status conference on August 23, 2012, the undersigned ordered petitioner to have an EEG and psychoeducational testing performed on L.A.B.   On September 25, 2012, petitioner filed a motion for an enlargement of time to have psychoeducational tests performed, which the undersigned granted on the same day.   During the status conference on October 18, 2012, petitioner's counsel said that L.A.B.'s psychoeducational testing could take six to eight months.   The parties also spoke about getting the results of L.A.B.'s EEG which had been done in April 2011.   Petitioner filed the EEG results on November 27, 2012.

The undersigned set a status conference for April 18, 2013 to discuss L.A.B.'s psychoeducational testing results.   During the status conference, petitioner's counsel reported that L.A.B. had not undergone psychoeducational testing because her condition had worsened.

The undersigned ordered petitioner to file updated medical records and provide the updated medical records to Dr. Podosin.

On July 1, 2013, the undersigned held a status conference in which the parties discussed obtaining a life care plan for L.A.B.   Petitioner's counsel clarified that petitioner had never made a demand on respondent.   The parties discussed obtaining a life care plan for L.A.B. during the next status conferences on July 31, 2013, September 27, 2013, November 12, 2013, and December 16, 2013.   On March 14, 2014, the parties reported that their life care planners had done a joint site visit in mid-January.   The undersigned ordered petitioner to send her life care plan to respondent by May 2, 2014.   Petitioner missed the May 2, 2014 deadline.   On May 6, 2014 the undersigned ordered petitioner to send the life care plan to respondent by May 20, 2014 and set a status conference for June 27, 2014, which was then rescheduled three times and ultimately held on July 24, 2014.

During the July 24, 2014 status conference, petitioner reported that the parties had exchanged life care plans.   Petitioner's counsel said he had the California Medicaid lien amount, but he would check to see if there was also a Colorado Medicaid lien.   During a status conference on October 8, 2014, petitioner's counsel reported that there was a Colorado Medicaid lien, but that he still needed to obtain a written declaration from Colorado Medicaid.

The undersigned held the next status conference on November 12, 2014, during which she expressed concern regarding how slowly the case had proceeded and said that if the parties did not make progress toward settlement she would set a date for an entitlement hearing.

During the next status conference on January 22, 2015, the parties said they were still working towards settlement.   The undersigned ordered petitioner to provide respondent with the updated Medicaid lien amount, amongst other items.   On March 9, 2015, petitioner filed a status report saying she had received the Medicaid lien amount from Colorado, but was still determining the amount of money owed to a third party health provider.   Petitioner's counsel reported he was researching whether "a third party health provider that receives a premium from a state that provides Medicaid benefits is entitled to reimbursement or [to] assert[ing] a lien under this Program."   Status rep. dated Mar. 9, 2015, at 1.   The undersigned discussed petitioner's status report during the status conference held on March 23, 2015.   She ordered petitioner's counsel to obtain confirmation from Colorado Department of Care and Finances regarding the nature of Colorado's relationship with Rocky Mountain Health Plan.   Petitioner had not ascertained the nature of the relationship between Colorado and Rocky Mountain Health Plans before the next status conference on April 22, 2015, but said he would request a copy of their contract.   On April 22, 2015, the undersigned issued an Order for petitioner to provide to Rocky Mountain Health Plans which clarified that Rocky Mountain Health Plans would not be reimbursed for any of L.A.B.'s treatments that were not related to her vaccine injury.

On May 27, 2015, petitioner filed a status report explaining that L.A.B. had been enrolled in the Rocky Mountain HMO by Colorado Medicaid but that he did not have a lien amount from Rocky Mountain Health Plans yet.   He said he had requested additional information from Rocky

3

Mountain Health Plans and asked for the status conference set for June 2, 2015 to be rescheduled to allow him to try to obtain additional records.   The undersigned granted petitioner's request on June 1, 2015 and rescheduled the status conference for July 8, 2015.

During the status conference on July 8, 2015, petitioner's counsel said he had recently received an updated Medicaid lien amount and that the parties were discussing damages.   The undersigned set the next status conference for August 26, 2015.

After the parties requested and received four extensions of time, the status conference was held on November 6, 2015.   During the status conference on November 6, 2015, petitioner said she had accepted respondent's settlement offer, but that petitioner needed to provide respondent with an updated Medicaid lien amount because respondent needed to update the tables to reflect a 2016 judgment as judgment would not enter until 2016.

Petitioner said she was waiting for an updated Medicaid lien amount during the next status conference held on January 11, 2016.   Petitioner's counsel said that while he waited on the Medicaid lien amount, he would work on having petitioner appointed the guardian of L.A.B. in Colorado.   During the status conference on March 14, 2016, petitioner's counsel said he had received the Medicaid lien amount.   Respondent's counsel said her client would need a letter from Colorado confirming the final Medicaid lien amount.   The undersigned set the next status conference for May 13, 2016.

Petitioner's counsel failed to appear at the May 13, 2016 status conference because he did not have the status conference in his calendar.   The undersigned issued an Order noting that petitioner's counsel had previously failed to appear for status conferences on May 21, 2015 and June 16, 2010.   She explained that after petitioner's counsel sent respondent a letter from Colorado accepting the final Medicaid lien amount, respondent's counsel should ask the undersigned to issue a 15-Week Order.

On June 9, 2016, the undersigned issued an Order explaining that petitioner had accepted respondent's settlement offer nearly seven months earlier but had failed to complete the simple task of providing a letter from the State of Colorado to respondent.   The undersigned said that she would cut petitioner's counsel's hourly rate by 50 percent from the date of the Order due to his failure to focus on the case.   Moreover, the undersigned said that if petitioner did not provide the letter from Colorado Medicaid by July 8, 2016, she would require petitioner to file an expert report.

In a status report filed on July 1, 2016, respondent said the Medicaid lien amount had been finalized and accepted by the Colorado Department of Healthcare Policy and Financing. Respondent explained that due to the passage of time he needed to update his calculations before requesting a 15-Week Stipulation Order.

On July 11, 2016, the parties informed the undersigned that they had reached a tentative settlement agreement.   The undersigned issued a 15-Week Order on the same date.

On October 20, 2016, the parties filed a stipulation.   On the same date, the undersigned issued a decision based on the parties' stipulation.

On April 6, 2017, petitioner filed a motion for attorneys' fees and costs, requesting attorneys' fees of $107,907.50 and attorneys' costs of $31,415.60, for a total request of $139,323.10.

On April 20, 2017, respondent filed a response to petitioners' motion explaining that he is satisfied this case meets the statutory requirements for an award of attorneys' fees and costs under 42 U.S.C. § 300aa-15(e)(1)(A)-(B).   Resp. at 2.   Respondent "respectfully recommends that the [undersigned] exercise her discretion and determine a reasonable award for attorneys' fees and costs."   Id. at 3.   Petitioner did not file a reply to respondent's response.

On August 8, 2018, petitioner filed a document called "Errata" in which she said she realized that in her June 9, 2016 Order the undersigned said she would cut petitioner's hourly rate by 50% after the date of the Order.   Petitioner stated she had calculated that a 50% reduction in hourly rate starting on June 9, 2016 would work out to a reduction of $6,251.75. Petitioner explained she was now asking for a total of $133,071.35.

The matter is now ripe for adjudication.

## DISCUSSION

### A.  Legal Standard for Attorneys' Fees and Costs

#### 1.  In General

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." 42 U.S.C. § 300aa-15(e)(1).   It is not necessary for a petitioner to prevail in the case-in-chief in order to receive a fee award as long as petitioner brought the claim in "good faith and there was a reasonable basis for the claim."   Id.   The special master has "wide discretion in determining the reasonableness" of attorneys' fees and costs.   Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994); see also Saxton ex rel. Saxton v. Sec'y of HHS, 3 F.3d 1517, 1519 (Fed. Cir. 1993) ("Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications.").   Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond.   See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009).

#### 2.  Reasonable Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine "reasonable attorneys' fees" and costs under the Act.   Avera v. Sec'y of HHS, 515 F. 3d. 1343, 1347 (Fed.

Cir. 2008).   The lodestar approach involves a two-step process.   First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"   Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Secondly, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings, such as the quality of petitioner's counsel's work.   Avera, 515 F.3d at 1348.

### 3.   Reasonableness of Requested Attorneys' Fees and Costs

Based on her experience and review of the billing records submitted by petitioner, the undersigned finds that an award of attorneys' fees and costs request is reasonable.   However, after reviewing the procedural history of the case, the undersigned will cut the amount of attorneys' fees awarded to petitioner for her attorneys' work on this case.   Petitioner's counsel postponed the culmination of this case by not doing his work.   He failed to appear at three status conferences.   His dilatoriness meant that petitioner's award was extremely delayed, which is unfair to petitioner.   Petitioner accepted respondent's counteroffer on November 6, 2015, but the parties did not file a stipulation until July 11, 2016, more than eight months later.   This delay occurred because petitioner's counsel was extremely slow in obtaining an updated Medicaid lien amount.   The updated Medicaid lien amount was only needed because petitioner's counsel's delay meant the case would settle in 2016 instead of 2015.   Due to the fact that petitioner's counsel's dilatoriness means he did not serve the interests of his client appropriately, the undersigned think it is appropriate to cut petitioner's total attorneys' fees by 20% instead of cutting petitioner's counsel's hourly rate by 50% from June 9, 2016.   **Therefore, the undersigned reduces petitioner's attorneys' fees and costs award by $21,581.50**.

Accordingly, the court awards **$117,741.60**, representing attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioner and Neil Fialkow, Esq., in the amount of **$117,741.60**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED.**

Dated: <u>August 29, 2017</u>                                             s/ Laura D. Millman
                                                                                    Laura D. Millman
                                                                                    Special Master

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.